```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

_____

UNITED STATES OF AMERICA,        )
                                 )
    Plaintiff,                   )
                                 )
vs.                              )   No. 10-20193-JPM-dkv
                                 )
                                 )
JAMES THOMAS CRIBBS,             )
                                 )
    Defendant.                   )

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
_____

    The defendant, James Thomas Cribbs ("Tommy Cribbs"), has been charged in an indictment with four counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g).  Before the court is the October 5, 2010 motion to suppress all evidence seized in a warrantless search of Tommy Cribbs's property located at 473 Cribbs Road in Dyer County, Tennessee.  Tommy Cribbs brings the motion on the grounds that the search was unconstitutional under the Fourth Amendment and any evidence seized pursuant to the search must be suppressed.  Specifically, Tommy Cribbs seeks to suppress four firearms and ammunition found during the warrantless search.  The government filed a timely response in opposition.  The motion was referred to the United States Magistrate Judge for a report and recommendation.

    The court held an evidentiary hearing on November 23, 2010.  At the hearing, the government called two witnesses: (1) Special

Agent Steve Wiley ("Agent Wiley") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and (2) Chief Investigator Terry McCreight ("Investigator McCreight") of the Dyers County Sheriff's Office ("Sheriff's Office"). Tommy Cribbs testified on his own behalf. The parties introduced a total of five exhibits into evidence: (1) Six pages of photographs, including photographs of a safe and firearms; (2) ATF Receipt for Property; (3) Photograph of Tommy Cribbs's brick house at 473 Cribbs Road; (4) Closer photograph of 473 Cribbs Road; and (5) an Order of Protection. At the conclusion of the evidentiary hearing, the court requested that each party supplement its brief to respond to the issue of whether knowledge of an Order of Protection is imputed to all officers once it is filed. Both parties have filed supplemental briefs. After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, the court submits the following findings of fact and conclusions of law and recommends that the amended motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

On June 2, 2009, Johnny Cribbs called ATF to report that his father, Tommy Cribbs, was unlawfully in possession of firearms. Agent Wiley testified that when he returned Johnny Cribbs's phone call, Johnny Cribbs stated that his dad, the former Sheriff of Dyer County, was acting erratically, taking medication, drinking, had

assaulted someone, and was a felon in possession of firearms. Johnny Cribbs informed Agent Wiley that he lived at 473 Cribbs Road and that his father's firearms were kept in Johnny Cribbs's safe at the residence.

On June 3, 2009, Agent Wiley, along with Investigators McCreight and Chris Gorman, met Johnny Cribbs at 473 Cribbs Road. Although Agent Wiley and Investigator McCreight admitted that they did not do an outstanding warrant check or criminal background check on Johnny Cribbs before meeting him, Investigator McCreight testified that he had been with the Dyer County Sheriff's Office for over twenty years, had been out to the Cribbs' property before, knew that Johnny Cribbs had previously lived there with his dad, and was familiar with the Jeep that Johnny Cribbs drove.  When the officers arrived at 473 Cribbs Road, at approximately 12:55 p.m., they saw Johnny Cribbs's Jeep in the driveway.  Johnny Cribbs let them in the house and showed them into the living room where his safe was located.  Johnny Cribbs entered a combination into the electronic keypad on the safe, opened it, and identified one firearm belonging to him and four firearms and a total of seven rounds of ammunition that belonged to his dad.  The officers seized the firearms and ammunition belonging to Tommy Cribbs and gave Johnny Cribbs a receipt for the property.

At the evidentiary hearing, there was some conflict as to who lived at 473 Cribbs Road at the time of the search.  Although

Johnny Cribbs told Investigator McCreight that he lived there, Tommy Cribbs testified that he lived at 473 Cribbs Road without Johnny Cribbs and that the warrantless search and seizure took place without his knowledge or permission. Tommy Cribbs testified that his son had been living with him at 473 Cribbs Road, but that he ordered Johnny Cribbs to move out prior to the search. Tommy Cribbs stated that he owned two houses located on Cribbs Road: the single-story, brick house located at 473 Cribbs Road, and a wooden house, set back approximately 100 to 150 yards from the brick house, located at 383 Cribbs Road. On cross examination, Tommy Cribbs admitted that his address on his license was 383 Cribbs Road and that 383 Cribbs Road was listed as his address when he was arrested in May of 2009, but that he had moved into 473 Cribbs Road in January of 2009.

    Tommy Cribbs further testified that he obtained an Order of Protection, Exhibit 5, at 12:00 p.m. on June 2, 2009, to have his son Johnny Cribbs removed from his residence. One of the conditions of the Order of Protection mandated that Johnny Cribbs stay away from Tommy Cribbs's residence and property. Another condition prohibited Johnny Cribbs from possessing or purchasing a firearm. The Order of Protection was not served on Johnny Cribbs until 1:45 p.m. on June 3, 2009, fifty minutes after the search was conducted. Agent Wiley and Investigator McCreight testified that

they had no knowledge of the Order of Protection when they met Johnny Cribbs on his dad's property.

The court finds the testimony of all the witnesses to be credible.

## II.   PROPOSED CONCLUSIONS OF LAW

In his motion and supplemental brief, Tommy Cribbs argues that the firearms and ammunition seized during the warrantless search of his house should be suppressed because (1) he did not give consent to search and (2) the officers cannot rely on Johnny Cribbs's consent because an Order of Protection, prohibiting Johnny Cribbs from being on his property, was filed before the search occurred. In response, the government argues that the search was still valid under Johnny Cribbs's apparent authority to consent despite the Order of Protection because, at the time of the search, the officers had no actual knowledge of the Order of Protection and Johnny Cribbs was not served with the Order of Protection until after he allowed the officers into his father's house.[1]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. Warrantless searches and seizures are considered "per se unreasonable - subject only to a few specifically established and

---

[1]   In its response brief, the government originally objected to Tommy Cribbs's standing to bring the instant motion; however, the government conceded standing during the evidentiary hearing.

well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). A search conducted with an individual's consent is one of these exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In order for consent to be valid, the consent has to be (1) voluntary and (2) made by a person with authority to consent. *United States v. Matlock*, 415 U.S. 164, 171 (1974).

Consent to search can be provided by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.*; *United States v. Moore*, 917 F.2d 215, 223 (6th Cir. 1990). Common authority is

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171 n.7. Even if the third-party lacks the authority to consent, a search may be valid if the police rely on a third party's apparent authority to consent in good faith and the reliance is reasonable based on the facts known by the police at the time of the search. *Ill. v. Rodriguez*, 497 U.S. 177, 186 (1990); *United States v. Morgan*, 435 F.3d 660, 663-64 (6th Cir. 2006)(finding that the officers reasonably relied on a wife's authority to consent to search of the defendant's computer because she used it without having a separate log-on or password). The reasonableness of the officer's belief that the third-party had

6

authority to consent is an objective standard: whether a person of reasonable caution with the same facts available would believe the third-party had authority to consent.  *Id.* at 188.

In the present case, the government argues that the search was valid because the officers had reasonably relied on Johnny Cribbs's apparent authority to consent to the search.  At the time of the search, Johnny Cribbs told the officers that he lived at 473 Cribbs.  Investigator McCreight testified that he was familiar with the Cribbs property and knew that Johnny Cribbs had lived there at one point.  When the officers arrived at the house, Johnny Cribbs's car was parked in the driveway, Johnny Cribbs came to the side door in the carport area, and Johnny Cribbs let the officers into the house.  The officers testified that there were no signs of forced entry into the house.  Johnny Cribbs knew where the safe was located in the house and also knew the combination to the safe.  All of these facts weigh in the favor of the officers' reasonable reliance on Johnny Cribbs's authority to consent.  However, if the officers had knowledge that there was an Order of Protection prohibiting Johnny Cribbs from being on Tommy Cribbs's property, a person of reasonable caution would not believe Johnny Cribbs had authority to consent to the search of the house.

The government argues that the Order of Protection does not invalidate Johnny Cribbs's apparent authority to consent because neither Johnny Cribbs nor the officers had actual knowledge that a

7

protective order had been issued against Johnny Cribbs at the time of the search. In opposition, Tommy Cribbs argues that once a copy of the protective order was received by the Sheriff's Office, knowledge of the order was imputed to the officers who searched his house.

Issuance of an order of protection is governed by statute. TENN. CODE ANN. § 36-3-601 et seq. "Upon the filing of a petition . . . , the courts may *immediately*, for good cause shown, issue an ex parte order of protection." TENN. CODE ANN. § 36-3-605 (emphasis added). Once an order of protection is issued by the court, a copy of the order "shall be issued to the petitioner, the respondent, and the local law enforcement agencies having jurisdiction in the area where the petitioner resides." *Id.* § 36-3-609(e). Immediately after receiving a copy, the law enforcement agency must enter the protective order into the Tennessee Crime Information System and transmit the info to the National Crime Information Center ("NCIC"). *Id.* Protective orders should be transmitted to the Tennessee Crime Information Center ("TCIC") and the NCIC, regardless of whether the order has been served. TCIC, *Tennessee Information Enforcement System: TIES Query Certification Study Guide*, Slide 116 (2001), http://www.cortn.org/departments/police/Police/workbook_files/frame.htm.

Tommy Cribbs relies on the "collective knowledge" doctrine to support his position that the officers' imputed knowledge of the Order of Protection against Johnny Cribbs made the search of his house illegal.  Under the collective knowledge doctrine, "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all."  *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983).  This doctrine is typically applied in two situations: (1) when an officer with sufficient evidence to amount to reasonable suspicion or probable cause requests another officer to detain, arrest, or search an individual; or (2) when officers have independent knowledge of facts which together amount to reasonable suspicion or probable cause.  *United States v. Ramirez*, 473 F.3d 1026 (9th Cir. 2007).

While the court agrees with the defense's line of reasoning, there has not been enough evidence presented for the court to find that the officers had imputed knowledge of the Order of Protection against Johnny Cribbs.  The Order of Protection was entered by the court at 12:00 p.m. on June 2, 2009, but was not served on Johnny Cribbs until June 3, 2009 at 1:45 p.m.  Attached to the Order of Protection is the NCIC/TCIC Protection Order Entry Form.  This form does not indicate when, or if, the Order of Protection was entered into NCIC because the "Date Entered" line was left blank.  The form also does not indicate when or if the Sheriff's Office received a copy of the Order of Protection, and there was no proof that the

Order of Protection was delivered to the Sheriff's Office prior to the search of the house. Without this information, the court cannot find that the Sheriff's Office had actual knowledge of the Order of Protection and that this knowledge was imputed to the officers that conducted the search of Tommy Cribbs's home. If the officers had no actual or imputed knowledge of the Order of Protection, it is reasonable that they relied on Johnny Cribbs's authority to consent to the search of his father's house based on the facts known to them at the time of the search.

Accordingly, the court submits that the search of Tommy Cribbs's house was valid under the Fourth Amendment because the officers that conducted the search reasonably relied on Johnny Cribbs's apparent authority to consent.

### III. RECOMMENDATION

For the reasons expressed above, it is recommended that Tommy Cribbs's motion to suppress be denied.

Respectfully submitted this 11th day of February, 2011.

> s/Diane K. Vescovo
> DIANE K. VESCOVO
> UNITED STATES MAGISTRATE JUDGE